FILED

SEP 15 2026

Bonnie N. Hackler, Acting Clerk
U.S DISTRICT COURT

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

1. AMBER M. FISHER,

Plaintiff,

v.

2. TULSA BOYS' HOME, INC.,

Defendant.

**Case No.** 26 CV - 575 SEH . CDL

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION UNDER TITLE VII**

**JURY TRIAL DEMANDED**

Plaintiff Amber M. Fisher, proceeding pro se, alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in the Northern District of Oklahoma because the employment practices at issue occurred in Tulsa County, Oklahoma, and Defendant operates in this District.

## II. PARTIES

4. Plaintiff Amber M. Fisher is an adult resident of Sand Springs, Oklahoma, and was employed by Defendant Tulsa Boys' Home, Inc. from November 2, 2016 until June 11, 2025.

5. Defendant Tulsa Boys' Home, Inc. ("TBH") is an employer within the meaning of Title VII and operates a residential treatment facility in Sand Springs, Oklahoma.

6. At the relevant time, Plaintiff was the B Shift Program Supervisor. Ken Callen ("Callen") was Plaintiff's direct supervisor and acted on behalf of TBH in communicating and implementing employment-related decisions affecting Plaintiff and her spouse.

## III. ADMINISTRATIVE EXHAUSTION

IFP pend
& summons

7. Plaintiff timely filed EEOC Charge No. 564-2025-03110 alleging discrimination based on sex and retaliation.

8. The EEOC issued a Determination and Notice of Rights dated July 1, 2026. Plaintiff received the Notice on July 1, 2026. A copy of the Notice is attached as Exhibit A.

9. This action is filed within ninety days of Plaintiff's receipt of the Notice of Rights.

## IV. FACTUAL ALLEGATIONS

10. Plaintiff began working for TBH on November 2, 2016 as a Residential Youth Care Worker and was promoted to B Shift Program Supervisor in approximately September 2020. Her performance was generally satisfactory.

11. Plaintiff's spouse, Jennifer Fisher ("Jennifer"), also worked for TBH. Jennifer's direct supervisor was not Plaintiff, although TBH later took the position that Jennifer fell within Plaintiff's broader chain of command because Plaintiff supervised the shift.

12. TBH knew of Plaintiff's relationship with Jennifer when Plaintiff was considered for the supervisor position. During Plaintiff's interview with Tanisha Penn Moore and Callen, the relationship was specifically discussed, including whether it would affect Plaintiff's supervisory role. Plaintiff was promoted and continued in the role for approximately five years.

13. Plaintiff and Jennifer married on June 26, 2022. Their marriage was openly known at TBH. Callen and Mike Murphy attended the wedding, and then-Executive Director Gregg Conway also knew of the marriage.

14. In May 2025, TBH undertook a review of familial and supervisory relationships under its nepotism/conflict-of-interest policy. TBH later represented during the EEOC process that, during a leadership transition, its Board became more actively involved and Board/Personnel leadership directed a review of supervisory reporting structures for potential nepotism-policy conflicts.

15. On or about May 21, 2025, Callen called Plaintiff into a meeting concerning Jennifer's employment. Although Callen stated that the policy applied to the relationship, when describing who would be required to change shifts and who would face termination if the conflict remained unresolved, he specifically discussed Jennifer. Plaintiff was not told that her own shift, position, or assignment had to change.

16. Plaintiff was never offered a transfer, reassignment, alternate shift, different supervisory position, or other change to her own employment as a means of resolving the asserted conflict.

17. Plaintiff understood from Callen that if the scheduling/chain-of-command issue was not resolved, Jennifer would face termination by June 20, 2025. Plaintiff was not told that either spouse could choose to transfer.

18. Because the issue concerned Jennifer's employment, Plaintiff asked Callen to have someone other than Plaintiff communicate directly with Jennifer. Plaintiff sought to avoid acting as the intermediary in a matter affecting her spouse and to avoid any appearance of favoritism.

19. Subsequent written communications from Callen discussed trying to "figure out something for Jen" and whether a schedule change might create an option for Jennifer. A possible move to C Shift was discussed for Jennifer, and discussions continued to focus on changing Jennifer's schedule rather than Plaintiff's.

20. Plaintiff and Jennifer had significant practical constraints affecting a schedule change, including one shared vehicle and family caregiving responsibilities. Plaintiff recalls discussing the one-vehicle issue with Callen during the May 21 meeting.

21. On May 27, 2025, Plaintiff submitted a written resignation effective June 11, 2025. The resignation letter contemporaneously explained Plaintiff's understanding that Jennifer faced

changing shifts or termination and that Plaintiff believed she was better positioned than Jennifer to obtain replacement employment.

22. When Plaintiff delivered her resignation, she told Callen that she was resigning because of the situation involving Jennifer and the nepotism policy. Callen accepted the resignation. He did not tell Plaintiff that she had misunderstood the policy, offer Plaintiff a transfer or alternate position, or ask Plaintiff to withdraw or reconsider the resignation.

23. Discussions after Plaintiff submitted her resignation continued to focus generally on possible scheduling changes for Jennifer. No transfer, alternate shift, or different supervisory role was offered to Plaintiff, and no workable scheduling arrangement for Jennifer was identified before Plaintiff's separation.

24. TBH later represented during the EEOC process that Plaintiff had been given the option for either spouse to transfer to another shift within the same functional role. Plaintiff disputes that representation as applied to her: no transfer or alternate shift was ever offered to Plaintiff.

25. TBH also acknowledged during the EEOC process that two brothers worked on the overnight shift in circumstances in which one brother performed supervisory work while the other brother worked on that shift.

26. TBH stated that the male supervisory-family conflict was not corrected until late July 2025, after Plaintiff's June 11, 2025 separation.

27. TBH further acknowledged that it did not have a formal human-resources function overseeing these personnel issues at the relevant time and that its mechanisms for identifying and addressing potential conflicts were not consistent.

28. Plaintiff contends that TBH's facially neutral nepotism/conflict policy was applied or implemented inconsistently and that sex was a motivating factor in the different treatment Plaintiff experienced.

29. Plaintiff further contends that Callen's implementation and communication of the policy are relevant to discriminatory motive. A former TBH employee has recalled a workplace conversation in Callen's office in which homosexuality was characterized as a form of mental illness or words to that effect. The former employee presently believes Callen was the speaker but has acknowledged uncertainty about the speaker because of the passage of time.

30. During Plaintiff's exit interview, Callen asked how TBH could improve, and Plaintiff raised concerns involving another supervisor and employee complaints. Plaintiff did not raise concerns regarding Callen's own conduct, including concerns regarding sexism and homophobia, because Callen himself was conducting the exit interview.

31. Plaintiff remained in her B Shift Program Supervisor role through her final day. Plaintiff contends that the discriminatory and unequal implementation of TBH's policy materially affected the terms and conditions of her employment and contributed to circumstances that caused her resignation.

32. Before May 21, 2025, Plaintiff participated with other employees in ongoing efforts to raise workplace and leadership concerns. As part of those efforts, Plaintiff expressed concerns that complaints brought by women were not handled the same as complaints brought by men and expressed concerns about sexism and homophobia in leadership. Plaintiff also assisted another employee in preparing information for presentation to Board leadership.

33. Plaintiff does not presently know whether Callen, Board leadership, or other decision-makers knew before May 21 that Plaintiff was a source of the discrimination-related concerns being

raised through another employee. Plaintiff does not allege that such pre-May 21 knowledge is presently established.

34. TBH maintained a written policy stating that employees making good-faith reports pursuant to its policy would not be retaliated against, even when an investigation did not find a policy violation.

35. On May 23, 2025, Plaintiff personally sent messages to employees organizing a meeting to discuss workplace concerns and explaining that the group intended afterward to seek a meeting with Ellen Martucci, a Board leadership figure. The organizing effort was part of the broader workplace advocacy in which Plaintiff had been participating.

36. That same evening, after Callen learned of the planned meeting, he contacted Plaintiff. Plaintiff recalls Callen expressing that the effort was doing more damage than helping and directing Plaintiff not to hold the meeting. When Plaintiff asked how concerns involving Callen himself should be raised, Callen stated that such concerns could go to Mike Murphy and then the Board. Plaintiff understood Callen's direction as an instruction from her direct supervisor and complied by notifying invitees that the meeting was postponed.

37. During the same conversation, Plaintiff recalls Callen referring to having previously defended Plaintiff when others questioned whether she should be permitted to supervise because Jennifer worked on her shift. Plaintiff does not allege that Callen disciplined, demoted, rescheduled, changed her duties, or expressly pressured her to resign after the May 23 conversation and before her May 27 resignation.

## V. COUNT I - SEX DISCRIMINATION (TITLE VII)

38. Plaintiff incorporates the preceding paragraphs.

39. Title VII prohibits an employer from discriminating against an employee because of sex. Sex discrimination under Title VII includes discrimination because of sexual orientation.

40. TBH, acting through its managers and agents, subjected Plaintiff to unequal terms and conditions of employment and selectively or inconsistently implemented its nepotism/conflict-of-interest policy.

41. Plaintiff alleges that sex was a motivating factor in the challenged treatment, including the manner in which the policy was communicated and implemented and the materially different handling of comparable familial supervisory conflicts.

42. Plaintiff alleges that the discriminatory treatment caused compensable harm and contributed to her resignation. To the extent supported by the evidence and applicable law, Plaintiff alleges that the circumstances amounted to constructive discharge.

43. As a direct and proximate result, Plaintiff suffered lost compensation and benefits, other economic losses, emotional distress, and other damages recoverable under law.

## VI. COUNT II - RETALIATION (TITLE VII)

44. Plaintiff incorporates the preceding paragraphs.

45. Title VII prohibits retaliation against an employee because the employee opposed practices made unlawful by Title VII or assisted others in opposing such practices.

46. Before May 21, Plaintiff participated in workplace advocacy that included opposition to perceived sex-based disparities in the handling of employee complaints and concerns regarding sexism and homophobia. Plaintiff assisted another employee in preparing information intended for Board leadership.

47. Plaintiff does not presently know whether Callen or other relevant decision-makers knew before May 21 that Plaintiff personally was a source of those discrimination-related concerns.

Plaintiff therefore does not allege such knowledge as an established fact and seeks discovery concerning the communications and knowledge of Defendant's decision-makers.

48. By May 23, Callen knew Plaintiff personally was organizing employees to raise workplace concerns through a meeting and intended escalation to Board leadership. Callen directed Plaintiff not to hold the meeting, and Plaintiff complied.

49. Plaintiff alleges retaliation to the extent discovery establishes that Defendant knew of Plaintiff's protected opposition and that such protected opposition was a but-for cause of materially adverse treatment. Plaintiff does not allege that she was formally disciplined, demoted, rescheduled, or stripped of duties after the May 23 conversation.

50. To the extent proven, Plaintiff seeks recovery for damages caused by unlawful retaliation as permitted by Title VII.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on the Title VII claims proven at trial;

B. Award back pay, lost benefits, and other proven past economic losses, subject to applicable law and mitigation;

C. Award compensatory damages, including damages for proven emotional distress, in an amount determined by the trier of fact and within statutory limits;

D. Award punitive damages to the extent permitted by law and supported by the evidence;

E. Award appropriate equitable and injunctive relief addressing nondiscrimination, consistent administration of employment policies, complaint processes, and protection against retaliation;

F. Award recoverable costs and any other relief available to a prevailing pro se litigant under applicable law; and

G. Grant such other and further relief as the Court deems just and proper.

Plaintiff does not seek reinstatement or front pay.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by jury.

Respectfully submitted,

Amber Fisher

Amber M. Fisher, Pro Se
1123 N. McKinley Ave.
Sand Springs, OK 74063
Phone: 918-698-2786
Email: afisher0283@gmail.com
Date: 9/14/26

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Oklahoma City Area Office**
215 Dean A. McGee Avenue, Suite 524
Oklahoma City, OK 73102
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Oklahoma City Direct Dial: (405) 666-0360
FAX (405) 231-4140
Website: www.eeoc.gov

July 1, 2026

Mrs. Amber M. Fisher
1123 N McKinley Ave
Sand Springs, OK 74063

Re: Mrs. Amber M. Fisher v. Tulsa Boys Home
EEOC Charge Number: 564-2025-03110

Dear Mrs. Amber M. Fisher:

The Commission has completed the investigation of the above referenced charge. Below is a summary of the evidence considered.

In your EEOC charge, you allege you were subjected to discrimination based on sex, when you were you subjected to unfair terms and condition. You also allege you were constructively discharged after participating in a protected activity and/or complaining of discrimination.

The evidence we have gathered does not suggest you were you subjected to unfair terms and condition because of your sex, or that you constructively discharged due retaliation.

Specifically, Respondent submitted information showing that you received notification that your spouse was not able to work within your chain of command due to the Nepotism Policy. Respondent provided you and your spouse with alternative options for your spouse to consider. There is no indication that Respondent requested for you to change your shift or indication that your employment status would change prior to you submitting a resignation letter. The evidence does not support you constructively discharged because of discriminatory and/or retaliatory conduct.

Based on our review of the evidence, it is unlikely that additional investigation will result in a violation of the statute(s) we enforce. The EEOC has completed the processing of your charge and is issuing you a Determination and Notice of Rights, which will allow you to pursue your claims further by filing a private lawsuit within ninety (90) days of your receipt of EEOC's official notice of dismissal.

Sincerely,

Precious Roberts Digitally signed by Precious Roberts Date: 2026.07.01 14:08:25 -05'00'

Precious Roberts
Federal Investigator

cc:

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

Plaintiff(s) AMBER M. FISHER

vs. Case Number: ____________________

Defendant(s) TULSA BOYS' HOME, INC.

## COMPLAINT - EEOC

Comes now the Plaintiff, Amber M. Fisher and for her claim against the Defendant, states and alleges as follows:

1. This action is brought and jurisdiction lies pursuant to 42 U.S.C. §2000e-5. Venue is proper in this District.

2. Plaintiff is a(n) Caucasian / Non-Hispanic (Race) Female (Sex) who resides at

1123 N. McKinley Ave., Sand Springs, Oklahoma 74063
(Complete address)

3. The Defendant Tulsa Boys' Home, Inc. is an employer, employment agency, or labor organization, as defined in 42 U.S.C. §2000e, and is located at

2727 S. 137th W. Ave., Sand Springs, Oklahoma 74063

*(Note: 3a-3f are used only if there is more than one defendant. Plaintiff names one defendant.)*

3a. Defendant: N/A

3b. Defendant: N/A

3c. Defendant: N/A

3d. Defendant: N/A

3e. Defendant: N/A

3f. Defendant: N/A

4. On or about May 21, 2025, through June 11, 2025, Defendant:

discriminated against Plaintiff in the terms and conditions of employment; applied and enforced its relationship/nepotism policy in a manner Plaintiff alleges was discriminatory; failed to offer Plaintiff an equivalent transfer or reassignment option; retaliated against Plaintiff for opposing sex discrimination; and subjected Plaintiff to circumstances she contends resulted in constructive discharge. See attached Detailed Complaint, incorporated by reference.

*(Unlawful employment practices alleged)*

because of sex, including sexual orientation, and in retaliation for protected opposition to sex discrimination.

5. Plaintiff timely filed a written complaint of discrimination with the Equal Employment Opportunity Commission (EEOC) and received a right to sue letter, a copy of which is attached. All conditions precedent to the institution of this lawsuit have been fulfilled.

Wherefore, Plaintiff prays for:

back pay and other past economic losses; compensatory damages, including emotional-distress damages; punitive damages if supported by the evidence and law; declaratory, equitable, and injunctive relief; costs; a jury trial; and all other relief authorized by law. Plaintiff does not seek reinstatement or front pay.

Signature: Amber Fisher

*SIGN HERE - Amber M. Fisher, pro se*

Address: 1123 N. McKinley Ave.

City Sand Springs State Oklahoma ZIP 74063

Telephone: (918) 698-2786

Date: 9/14/26

*DATE WHEN SIGNED*